**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD JAMES ROMERO, | Case No. 1:11-cv-01571-BAM-HC |
|       Petitioner, | ORDER SUBSTITUTING WARDEN CONNIE GIPSON AS RESPONDENT |
|    v. | ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1) AND DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT |
| CONNIE GIPSON, WARDEN, | |
|       Respondent. | ORDER DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on September 26, 2011, and on behalf of Respondent on November 18, 2011. Pending before the Court is the petition, which was filed on September 16, 2011. Respondent filed a first amended answer on

1

December 22, 2011.  Although the time for filing a traverse has passed, Petitioner did not file a traverse.

I.   Jurisdiction and Substitution of Respondent

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Kern (KCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.  Accordingly, the Court concludes that it has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. B, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Connie Gipson, the successor to the warden of the California State Prison at Corcoran (CSP-COR) whom Petitioner had initially named in the petition. Pursuant to the judgment, Respondent had custody of Petitioner at CSP-COR, Petitioner's institution of confinement at the time the petition was filed.  (Doc. 16.)   Petitioner thus named as a

respondent a person who had custody of Petitioner within the meaning
of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section
2254 Cases in the District Courts (Habeas Rules).  See, <u>Stanley v.</u>
<u>California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).
Accordingly, the Court concludes that it has jurisdiction over the
person of the Respondent.

However, in view of the fact that the warden at CSP-COR is now
Connie Gipson, it is ORDERED that Connie Gipson, Warden of CSP-COR,
be SUBSTITUTED as Respondent pursuant to Fed. R. Civ. P. 25.[1]

II.   <u>Introduction</u>

Petitioner argues that he suffered violations of his
constitutional rights in connection with his entry of a plea of no
contest to a controlled substance violation, after which, due to a
change in state law, Petitioner became ineligible to receive good
conduct credits that Petitioner had believed he would be able to
earn while serving his sentence.

On or about February 19, 2009, Petitioner arrived at North Kern
State Prison in possession of three controlled substances:
methamphetamine, heroin, and marijuana.  (LD 1 [information].)
Petitioner was charged with three counts of possessing narcotics in
prison, with one count alleged for each bindle.  (<u>Id.</u>)  The
information was later amended to combine the three charges into one
count of possessing all three substances.  (LD 5, exh. "B" at 4.)
It was also alleged that Petitioner suffered two prior "strike"

---

[1] Fed. R. Civ. P. 25(d) provides that when a public officer who is a party to a
civil action in an official capacity dies, resigns, or otherwise ceases to hold
office while the action is pending, the officer's successor is automatically
substituted as a party. It further provides that the Court may order substitution
at any time, but the absence of such an order does not affect the substitution.

convictions and multiple prior prison terms.  (LD 1.)  Jury trial
was set for November 2, 2009 (LD 5, exh. "B" at 2 [Rprtr.'s trnsrpt.
of change of plea]), but on that date the trial court announced that
the court would accept, over the prosecutor's objection, a plea with
an indicated sentence of three years.  (Id. at 2-3.)  The prosecutor
conceded he could not prove the strike allegations and would move to
dismiss them; however, he objected to the court's proposed
disposition and stated that he had offered four years.  (Id.)  In
discussing the reasons for the plea, the court stated that the
dismissal of prior strike allegations would make the case "a half-
time case" wherein Petitioner could possibly earn conduct credits of
one day for each day served,[2] and thus the parties were "essentially
fighting over a difference of, realistically, possibly six months."
(Id. at 3.)  The trial court advised Petitioner that by signing his
advisement of rights and waiver and plea forms, he was waiving his
rights "so you can take advantage of the plea bargain [Petitioner's
counsel] has negotiated for you...."  (Id. at 5.)  After being
advised of his rights, Petitioner entered a plea of no contest to
knowingly possessing narcotics in prison and admitted having served
two prior prison terms within the meaning of Cal. Pen. Code §
667.5(b) for violating Cal. Veh. Code § 10851 in 2001 and Cal. Pen.
Code § 496 in 1995.  (Id. at 6-8.)  The People then moved to dismiss
the remaining counts and enhancements "conditioned on the plea
remaining in full force and effect."  (Id. at 8-9.)

---

[2] Compare Cal. Pen. Code § 2933(a) (allowing accrual of post-sentence work time
credits of as much as one day for each day of actual custody so that prisoners
serve as little as 50% of their sentence, i.e., "half-time") with Cal. Pen. Code
§ 1170.12(a)(5) (limiting credits to no more than one-fifth, i.e., 80% time, if a
"strike" prior conviction is proven).

1      On January 4, 2010, Petitioner was sentenced to three years in

2  state prison.  (LD 2.)  To reach a sentence of three years instead

3  of four, the court struck one of the two prior prison terms admitted

4  by Petitioner.  (LD 2.)  The court awarded 225 days of pre-sentence

5  credit.  (Id.)  See Cal. Pen. Code § 4019(a)(4), (f) (awarding pre-

6  sentence behavior credits of two days for each four-day period

7  served in county jail, i.e., one-third time).

8      Petitioner did not appeal his conviction but filed three state

9  habeas corpus petitions.  In the KCSC, a petition was filed on March

10  30, 2010, and denied in a reasoned decision on June 1, 2010.  (LD

11  3.)  A second petition was filed in the Court of Appeal of the State

12  of California, Fifth Appellate District (CCA) on January 26, 2011,

13  and denied in a reasoned decision on February 17, 2011.  (LD 4.)

14  Petitioner sought review of the CCA's denial of his habeas petition

15  in the California Supreme Court (CSC), but his request was returned

16  unfiled because it was untimely.  (LD 5, exh. "E".)  A third and

17  final state habeas petition was filed in the CSC on April 11, 2011,

18  and summarily denied without a statement of reasoning or authority

19  on June 8, 2011.  (LD 5; see also petn., doc. 1, at 47 [CSC order].)

20      III.  Standard of Decision and Scope of Review

21       Title 28 U.S.C. § 2254 provides in pertinent part:

22       (d) An application for a writ of habeas corpus on
        behalf of a person in custody pursuant to the

23

24       judgment of a State court shall not be granted
        with respect to any claim that was adjudicated

25       on the merits in State court proceedings unless
        the adjudication of the claim-

26

27       (1) resulted in a decision that was contrary to,
        or involved an unreasonable application of, clearly

28       established Federal law, as determined by the
        Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision.  Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8 (2002).

A state court unreasonably applies clearly established federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir.

2002); see, Williams, 529 U.S. at 407.  An application of clearly

established federal law is unreasonable only if it is objectively

unreasonable; an incorrect or inaccurate application is not

necessarily unreasonable.  Williams, 529 U.S. at 410.  A state

court's determination that a claim lacks merit precludes federal

habeas relief as long as it is possible that fairminded jurists

could disagree on the correctness of the state court's decision.

Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even

a strong case for relief does not render the state court's

conclusions unreasonable.  Id.  In order to obtain federal habeas

relief, a state prisoner must show that the state court's ruling on

a claim was "so lacking in justification that there was an error

well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." Id. at 786-87.  The

standards set by § 2254(d) are "highly deferential standard[s] for

evaluating state-court rulings" which require that state court

decisions be given the benefit of the doubt, and the Petitioner bear

the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398.

Further, habeas relief is not appropriate unless each ground

supporting the state court decision is examined and found to be

unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132

S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's

legal conclusion was contrary to or an unreasonable application of

7

federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1).  Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision that was on the merits and was based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be identified in order to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

Here, the last reasoned decision was the decision of the CCA.

IV.   Denial of Due Process based on Violation of the Terms of a Plea Agreement

Petitioner argues that he was denied due process of law because contrary to the terms of what he characterizes as a plea agreement, he is no longer eligible to earn one-for-one credits as he was at

8

the time he entered his plea.  As presented to the CSC, Petitioner alleged that the plea agreement was violated by applying in his case amendments to Cal. Pen. Code § 2933.6 that took effect on January 25, 2010, eliminating time credits for inmates, such as Petitioner, who are classified and validated as prison gang members.  Petitioner alleged violations of the Sixth, Eighth, and Fourteenth Amendments. (LD 5, form at printed p. 3.)

A.   The State Court Decision

Here, the CCA's order denying petitioner's petition for writ of habeas corpus stated the following:

> The "Petition for Writ of Habeas Corpus," filed on
> January 26, 2011, is denied.  Petitioner's contention
> that he is entitled to half time credits pursuant to
> a plea bargain is conclusional and unsupported by an
> adequate record.  Moreover, petitioner fails to identify
> the law that he claims is being unfairly applied to deny
> him promised credit due to his gang status.

(LD 4, ord. of Feb. 17, 2011.)

B.   Analysis

A criminal defendant has a due process right to enforce the terms of his plea agreement.  Promises from the prosecution in a plea agreement must be fulfilled if they are significant inducements to enter into a plea.  Santobello v. New York, 404 U.S. 257, 262 (1971); Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006).  Plea agreements are contractual in nature and are measured by contract law standards.  United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).  In construing a plea agreement, a court must

9

determine what the defendant reasonably believed to be the terms of the plea agreement at the time of the plea.  United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002).

However, the construction of a state court plea agreement is a matter of state law, and federal courts will defer to a state court's reasonable construction of a plea agreement.  Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987); Buckley v. Terhune, 441 F.3d at 695.  In California, a negotiated plea agreement is a form of contract and is interpreted according to general contract principles and according to the same rules as other contracts.  Buckley v. Terhune, 441 F.3d at 695 (citing People v. Shelton, 37 Cal.4th 759, 767 (2006) and People v. Toscano, 124 Cal.App.4th 340, 344 (2004)).  In California, the plain meaning of an agreement's language must first be considered.  If the language is ambiguous, it must be interpreted by ascertaining the objectively reasonable expectations of the promisee at the time the contract was made.  Id.  If ambiguity remains after a court considers the objective manifestations of the parties' intent, then the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist, or in favor of the defendant.  Id. at 695-96.

Here, although Petitioner asserts that earning time credit was a term of his plea bargain, the state court could reasonably have concluded that the objective manifestations of the parties' intent

do not support Petitioner's position.  First, the state court could have concluded under state law that there was no plea bargain with the government for Petitioner to enforce.  At the time the plea was entered, the prosecutor objected to the sentence determined to be appropriate by the trial court; thus, it could reasonably be concluded that the prosecution did not enter into a binding plea agreement, but rather, based on governing state law, dismissed duplicative counts and allegations of prior convictions that could not be proved, followed by the Petitioner's pleading, independently of any bargain, to the consolidated count with an indicated sentence of three years.  The state court could have relied on state law to the effect that a state trial court lacks the authority to negotiate or enter into a plea contract over the objection of the prosecution, which is the People's sole agent in plea negotiations.  See, People v. Clancey, 56 Cal.4th 562, 573 (2013) (citing People v. Orin, 13 Cal.3d. 937, 942-43 (1975)).

Even if there was a plea agreement, fairminded jurists could disagree as to whether or not the agreement included a condition that Petitioner be permitted to earn, or be awarded, one-for-one credit.  In the change of plea colloquy, the court had indicated that it had spoken with the parties in chambers and believed that one reason for the plea and disposition was that the prosecution was "having a hard time proving the alleged strikes...."  The court then stated:

11

>           All right.  And secondly, then, we were coming down to
>           this being a half-time case and the prosecution was
>           offering four.  The defense was offering three....
>           ...
>           ...
>           In the Court's estimation, then, we were essentially
>           fighting over a difference of, realistically, possibly
>           six months....

(LD 5, ex. B, 2-3.)  Time credits were thus referred to during the

change of plea proceeding in the context of estimating the

difference in the two parties' negotiating positions on the duration

of the sentence to be imposed pursuant to a bargain.  However, it

does not appear that Petitioner was expressly promised that he would

earn time credits at all, let alone earn them at any specific rate,

during his incarceration.  Reference to the form of advisement of

rights, waiver, and plea form for felonies executed by Petitioner in

connection with the plea shows that in the portion of the form for

entry of a plea agreement or indicated sentence, it stated, "Court

indicated 3 yrs."  (Ans., ex. A, doc. 11, 27.)  It was stated that

if his prior convictions met certain requirements, then one of

several consequences would be that Petitioner would have to serve

eighty percent of his sentence.  (Id. at 29.)  There was no other

reference to the subject of time credits.  The form was signed under

penalty of perjury.  (Id. at 30.)

    Under the circumstances, the state court could reasonably have

concluded that Petitioner was sentenced to a three-year term that he

anticipated and understood permitted earning time credits at a basic

rate of one-for-one that was more advantageous than the rate associated with a four-year term; however, there was no express bargain as to an ultimate award of time credit.  Cf. Schoen v. Clark, No. 2:05-cv-01973-JKS, 2009 WL 3166650, *3 (E.D. Cal. Sept. 29, 2009) (unpublished) (rejecting a contention that a trial court's mistaken statement at a plea hearing that the petitioner's conduct credit would be limited to twenty percent of his actual period of confinement, where his credit was actually statutorily limited to fifteen percent of his actual period of confinement under the "violent felony" exception, rendered the accrual rate part of the plea agreement).

Because the record here reflected 1) the prosecutor's objection to the sentence, and 2) an absence of objective manifestation of an intention to include a specific time credit award as part of the bargain, the state court could reasonably have concluded that Petitioner had not provided an adequate record to support his claim that ineligibility to earn time credits violated a plea bargain. See Ricketts v. Adamson, 483 U.S. at 6 n.3 (1987) (construction of state court plea agreement is governed by state contract law, and federal court should not disturb a reasonable state court interpretation).  The state court reasonably concluded that Petitioner's allegations were conclusional and were not supported by a statement of specific facts warranting habeas corpus relief.  Cf. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).  Petitioner has not

shown that the state court's finding that Petitioner had not

supported his claim concerning the violation of the plea bargain was

contrary to, or an unreasonable application of, clearly established

federal law.

Accordingly, Petitioner's due process claim for violation of a

plea agreement will be denied.

V.   Intelligent and Voluntary Plea

Petitioner argues that his lack of knowledge of the amendment

of § 2933.6 and its effect on his ultimate credit-earning status

during his sentence rendered his plea unintelligent and involuntary.

Preliminarily, the Court notes that review of pre-plea issues

is limited by the entry of a guilty plea.  In Tollett v. Henderson,

411 U.S. 258, 266-67 (1973), the Court held that the petitioner's

guilty plea to first degree murder, based on the advice of counsel,

foreclosed any independent inquiry in federal habeas corpus

proceedings into the merits of a claim of unconstitutional racial

discrimination in the selection of the grand jury that returned the

indictment unless the petitioner demonstrated that the advice

regarding the plea was not within the range of competence demanded

of attorneys in criminal cases.  Id. at 266-67.  The Court stated

the following:

> We hold that after a criminal defendant pleads guilty, on
> the advice of counsel, he is not automatically entitled to
> federal collateral relief on proof that the indicting
> grand jury was unconstitutionally selected. The focus of
> federal habeas inquiry is the nature of the advice and the

14

voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' McMann v. Richardson, supra, 397 U.S. at 771, 90 S.Ct. at 1449. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

We thus reaffirm the principle recognized in the Brady trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett, 411 U.S. 266-67.

Here, Petitioner's challenge to the voluntariness of the plea is the basis for a related claim of ineffective assistance of counsel premised on counsel's failure to inform Petitioner of the impending amendment of Cal. Pen. Code § 2933.6 and its effect on the potential duration of Petitioner's actual time in custody. Accordingly, in the interest of economy, the Court will address the underlying claim concerning the validity of the plea.

15

Due process requires that a defendant's guilty plea be voluntary and intelligent, which in turn requires that the accused must validly waive the rights to trial by jury and to confront and cross-examine adverse witnesses as well as the privilege against compulsory self-incrimination, and the accused must plead with an understanding "of what the plea connotes and of its consequence." Boykin v. Alabama, 395 U.S. 238, 242, 242-43 (1969).  Voluntariness must be demonstrated by evidence in the record in light of the totality of the circumstances surrounding the plea.  Brady v. United States, 397 U.S. 742, 759 (1970); Boykin v. Alabama, 395 U.S. at 242.  "The longstanding test for determining the validity of a [no contest] plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).  A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing.  See Parke v. Raley, 506 U.S. 20, 31 (1992) (citing Johnson v. Zerbst, 304 U.S. 458, 468-69 (1938)).

A plea is voluntary and intelligent only if it is entered by one fully aware of the direct consequences of the plea.  Brady v. United States, 397 U.S. at 755; Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006).  A guilty plea can be voluntary even "if the defendant did not correctly assess every relevant factor entering into his decision," Brady v. United States, 397 U.S. at 757, as long as it is "entered by [a defendant] fully aware of the direct consequences" of his plea, id. at 755 (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir.1957) (en banc)).  Thus, in this circuit it has been held that a court conducting a plea

16

colloquy must advise the defendant of the direct consequences of his plea but need not advise of all possible collateral consequences of the plea. Torrey v. Estelle, 842 F.2d 234, 235-37 (9th Cir. 1988).

A direct, as distinct from collateral, consequence of a plea is a result that represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment. Torrey v. Estelle, 842 F.2d at 236. In Torrey, the court characterized as collateral the fact that the youth authority, to which the pleading defendant was committed after he was sentenced, could have the defendant recalled for a full prison sentence if the defendant were found not to be amenable to treatment due to his own misconduct. The accused had pled with knowledge of the possible full sentence and with an understanding that youth authority commitment was only a possibility. The court in Torrey noted that a court "cannot be required to foresee an accused's future conduct and to predict all possible alternative ramifications thereof." Id. The defendant's failure to succeed under the original terms of his sentence was viewed as "simply an indefinite possibility on which the trial judge had no duty to speculate." Id. Therefore, no due process violation arose out of the court's failure to advise the defendant of the possibility of his return to court and commitment to state prison. Id.

In Torrey, the court noted that in many cases the determination that a particular consequence is collateral has been based on the fact that it was in the hands of another government agency or in the hands of the defendant himself, such as release on parole that is determined by a parole authority and is dependent in part on the defendant's own post-conviction conduct, or initiation of mental

health commitment proceedings that does not automatically result from the conviction, results in submission of the issues to a different tribunal, and depends on matters other than the conviction alone. Torrey, 842 F.2d at 236.

There is no clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1) that the inability to earn time credits because of continuing gang affiliation is a direct consequence of a plea. Cf. Fernandez v. Dept. of Corrections, no. EDCV 12-1061 SJO (FFM), 2013 WL 1090419, *6-*7 (C.D.Cal., Feb. 4, 2013) (unpublished) (noting that the Supreme Court has observed that it has never held that the United States Constitution requires a state to furnish a defendant information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and citing Hill v. Lockhart, 474 U.S. at 56). In Fernandez, the court held that where the trial court and the petitioner's counsel failed to inform a pleading defendant that under California law she would be entitled to only fifteen percent work time credit over the course of her prison sentence instead of the fifty percent to which the defendant alleged that she had believed she was entitled, the earning of time credit was only a collateral consequence of the plea, which under the circumstances was voluntary. Id. In any event, as the court in Fernandez noted, the ability to earn work time credit, regardless of the rate, is not a definite, immediate, and largely automatic effect on the range of punishment that resulted from the plea. A prisoner is not automatically entitled to work time credit, but rather must earn any credit and must also behave in a manner not to forfeit the

18

1  credit that has been earned.[3]  Consequently, because of its nature, a

2  pleading defendant's ability to obtain any work time credits could

3  not have been a direct consequence of her plea.  Id.

4      Using similar reasoning, the state court here could reasonably

5  have concluded that the failure of advice did not render the

6  Petitioner's plea unintelligent or involuntary.  The state court's

7  decision was not contrary to, or an unreasonable application of,

8  clearly established federal law.

9      Therefore, Petitioner's claim will be denied.

10      VI.   Ineffective Assistance of Counsel

11      Petitioner alleges that he suffered a violation of his right to

12  the effective assistance of counsel guaranteed by the Sixth and

13  Fourteenth Amendments by counsel's failure to inform him of the

14  statutory amendment that in effect prohibited validated gang

15  associates from earning time credits.

16      The law governing claims concerning ineffective assistance of

17  counsel is clearly established for the purposes of the AEDPA

18  deference standard set forth in 28 U.S.C. § 2254(d).  Premo v.

19  Moore, - U.S. -, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151

20  F.3d 1226, 1229 n.2 (9th Cir. 1998).

21

22      To demonstrate ineffective assistance of counsel in violation

23  of the Sixth and Fourteenth Amendments, a convicted defendant must

24  _____

25  [3] The determination whether a prisoner receives conduct credits depends on his own conduct and the assessment of the California Department of Corrections and Rehabilitation.  Cal.Pen. Code §§ 2932-33. In Petitioner's case, for example, he

26  is ineligible to receive conduct credits because of his ongoing gang membership. Cal. Pen. Code § 2933.6(a)4; 15 Cal. Code Reg. § 3043.4(b); In re Sampson, 197

27  Cal. App. 4th 1234, 1242 (2011). At any time, Petitioner can disavow his gang affiliation, participate in a debriefing process, and be reclassified as a non-

28  gang member who is eligible to earn conduct credits. See 15 Cal. Code Reg. §§ 3378.1, 3341.5(c)(4).

1   show that 1) counsel's representation fell below an objective

2   standard of reasonableness under prevailing professional norms in

3   light of all the circumstances of the particular case; and 2) unless

4   prejudice is presumed, it is reasonably probable that, but for

5   counsel's errors, the result of the proceeding would have been

6   different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984);

7   Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

8          With respect to this Court's review of a state court's decision

9   concerning a claim of ineffective assistance of counsel, the Supreme

10  Court has set forth the standard of decision as follows:

11         To establish ineffective assistance of counsel "a
           defendant must show both deficient performance by counsel
12         and prejudice." Knowles v. Mirzayance, 556 U.S. --,--,129
           S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing
13         this standard and its relationship to AEDPA, the Court
           today in Richter, -- U.S., at -- - --, 131 S.Ct. 770,
14         gives the following explanation:

15

16         "To establish deficient performance, a person
           challenging a conviction must show that
17         'counsel's representation fell below an
           objective standard of reasonableness.'
18         [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052].
           A court considering a claim of ineffective
19         assistance must apply a 'strong presumption'
           that counsel's representation was within the
20         'wide range' of reasonable professional
           assistance. Id., at 689 [104 S.Ct. 2052]. The
21         challenger's burden is to show 'that counsel
           made errors so serious that counsel was not
22         functioning as the "counsel" guaranteed the
           defendant by the Sixth Amendment.' Id., at 687
23         [104 S.Ct. 2052].
24

25         "With respect to prejudice, a challenger must
           demonstrate 'a reasonable probability that, but
26         for counsel's unprofessional errors, the result
           of the proceeding would have been different.'
27         ...

28

                                    20

" 'Surmounting Strickland's high bar is never an
easy task.' Padilla v. Kentucky, 559 U.S. --, --
[130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010).
An ineffective-assistance claim can function as
a way to escape rules of waiver and forfeiture
and raise issues not presented at trial [or in
pretrial proceedings], and so the Strickland
standard must be applied with scrupulous care,
lest 'intrusive post-trial inquiry' threaten the
integrity of the very adversary process the
right to counsel is meant to serve. Strickland,
466 U.S., at 689-690 [104 S.Ct. 2052]. Even
under de novo review, the standard for judging
counsel's representation is a most deferential
one. Unlike a later reviewing court, the
attorney observed the relevant proceedings, knew
of materials outside the record, and interacted
with the client, with opposing counsel, and with
the judge. It is 'all too tempting' to 'second-
guess counsel's assistance after conviction or
adverse sentence.' Id., at 689 [104 S.Ct. 2052];
see also Bell v. Cone, 535 U.S. 685, 702, 122
S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v.
Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122
L.Ed.2d 180 (1993). The question is whether an
attorney's representation amounted to
incompetence under 'prevailing professional
norms,' not whether it deviated from best
practices or most common custom. Strickland, 466
U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application
of Strickland was unreasonable under § 2254(d)
is all the more difficult. The standards created
by Strickland and § 2254(d) are both 'highly
deferential,' id., at 689 [104 S.Ct. 2052];
Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117
S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the
two apply in tandem, review is 'doubly' so,
Knowles, 556 U.S., at ----, 129 S.Ct., at 1420.
The Strickland standard is a general one, so the
range of reasonable applications is substantial.
556 U.S., at ---- [129 S.Ct., at 1420]. Federal
habeas courts must guard against the danger of
equating unreasonableness under Strickland with
unreasonableness under § 2254(d). When § 2254(d)
applies, the question is not whether counsel's

21

1
2

    actions were reasonable. The question is whether
there is any reasonable argument that counsel
satisfied <u>Strickland's</u> deferential standard."

3
4

<u>Premo v. Moore</u>, 131 S.Ct. at 739-40 (quoting <u>Harrington v. Richter</u>,
131 S.Ct. 770 (2011)).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

  More specifically, a petitioner may attack the voluntary and
intelligent character of a guilty plea by showing that he received
ineffective assistance from counsel in connection with the entry of
the plea.  <u>Tollett v. Henderson</u>, 411 U.S. at 267.  To demonstrate
ineffective assistance of counsel in the context of a challenge to a
guilty plea, a habeas petitioner must show both that counsel's
advice fell below an objective standard of reasonableness as well as
a "reasonable probability" that, but for counsel's errors, the
petitioner would not have pleaded guilty and would have insisted on
going to trial.  <u>Hill v. Lockhart</u>, 474 U.S. at 58-59  (holding that
the two-part test of <u>Strickland v. Washington</u> applies to challenges
to guilty pleas based on the ineffective assistance of counsel);
<u>Missouri v. Frye</u>, – U.S. –, 132 S.Ct. 1399, 1405 (2012) (reaffirming
that <u>Hill</u> is properly applied to claims of ineffective assistance of
counsel in the context of acceptance of a plea bargain); <u>Padilla v.
Kentucky</u>, – U.S. –, 130 S.Ct. 1473, 1485 (2010) (stating that to
obtain relief on this type of claim, a petitioner must convince the
court that a decision to reject the plea bargain would have been
rational under the circumstances).

24
25
26
27
28

  Here, the state court could have concluded on the record before
it that counsel did not engage in unreasonable or sub-standard
conduct by failing to inform Petitioner of the amendment of Cal.
Pen. Code § 2933.6.  Petitioner alleged that he had been a validated
gang member since 1996.  (LD 5, printed p. 3.)  However, Petitioner

did not allege or demonstrate that at the time of his plea he had

informed his counsel of his custodial status as a validated gang

member.  (LD 5.)

Defense counsel has a duty to make a reasonable investigation

or to make a reasonable decision that makes a particular

investigation unnecessary.  Strickland, 466 U.S. at 691.  A failure

to investigate must be reasonable in light of all the circumstances.

Id.  Further, what counsel knows may be a critical component in

determining the reasonableness of a failure to investigate.  In this

regard, the Court in Strickland stated the following:

> The reasonableness of counsel's actions may be determined
> or substantially influenced by the defendant's own
> statements or actions. Counsel's actions are usually
> based, quite properly, on informed strategic choices made
> by the defendant and on information supplied by the
> defendant. In particular, what investigation decisions are
> reasonable depends critically on such information. For
> example, when the facts that support a certain potential
> line of defense are generally known to counsel because of
> what the defendant has said, the need for further
> investigation may be considerably diminished or eliminated
> altogether. And when a defendant has given counsel reason
> to believe that pursuing certain investigations would be
> fruitless or even harmful, counsel's failure to pursue
> those investigations may not later be challenged as
> unreasonable. In short, inquiry into counsel's
> conversations with the defendant may be critical to a
> proper assessment of counsel's investigation decisions,
> just as it may be critical to a proper assessment of
> counsel's other litigation decisions.

Strickland v. Washington, 466 U.S. at 691.

Here, Petitioner's gang membership does not appear to have been

at issue in the criminal proceedings that resulted in the

conviction.  If counsel did not know of Petitioner's validation as a

gang member, it would not necessarily have been unreasonable to

forego an inquiry into, and to fail to advise regarding, the effect

23

of gang association on earning conduct credits during service of the sentence.  Cf. Hill v. Lockhart, 474 U.S. at 61-62 (stating that if the accused did not inform his counsel of a prior conviction, then there was no factual basis for contending that the attorney's failure to advise concerning the effect of the prior conviction was ineffective assistance) (White, J., concurring); see also United States v. Avery, 15 F.3d 816, 817-18 (9th Cir. 1993) (rejecting an ineffective assistance claim regarding an omission of counsel where Petitioner could have provided information to have prevented the omission).

Further, there is no clearly established federal law within the meaning of § 2254(d)(1) that requires counsel to investigate and advise an accused of future legal developments regarding earning time credits in prison, a matter that is within the category of collateral consequences of a no-contest plea.  The Supreme Court has specifically reserved the question of whether an attorney's failure correctly to advise a defendant regarding "collateral" as distinct from "direct" consequences of a guilty plea can ordinarily be the basis for a claim of ineffective assistance of counsel.  See Padilla v. Kentucky, 559 U.S. at 364-65 (stating that the Court had never applied a distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance required under Strickland, and indicating that the appropriateness of the distinction was a question that the Court need not consider in that case because of the unique, severe, and essentially automatic nature of deportation as a consequence of a plea); Hill v. Lockhart, 474 U.S. at 60 (finding it unnecessary to determine whether there might be circumstances under which erroneous

advice by counsel as to parole eligibility might be deemed constitutionally ineffective assistance of counsel).

Thus, a fairminded jurist could conclude that the state court's decision did not contravene any clearly established Supreme Court law because the Court had not decided the question and had further acknowledged that the question was open.  See Murdoch v. Castro, 609 F.3d 983, 994 (9th Cir. 2010) (en banc), cert. den. Murdoch v. Castro, 131 S.Ct. 2442 (2011).  The state court could reasonably have found that Petitioner's attorney did not fail to meet the constitutional standard of competent assistance with respect to advice concerning the plea's collateral consequence of eligibility for prison time credits.  See, Gallardo v. Grounds, no. EDCV 11-1490-PA (CW), 2012 WL 5069959, *2-*5 (C.D.Cal. Jul. 30, 2012) (unpublished) (denying a claim of ineffective assistance based on counsel's alleged failure to advise a pleading defendant that time credits would accrue at twenty instead of fifty percent).

The state court could have reasonably concluded that Petitioner did not demonstrate any prejudice from the claimed ineffective assistance.  Petitioner has not set forth any defense to the charge or other factual basis for a conclusion that if Petitioner had not entered a plea of no contest, it was reasonably probable that he would have gone to trial on all three counts.  The offenses were simple, personal possession of three different contraband substances in prison.  It may be inferred that the consolidation of the counts was in some sense precipitated by the plea, and it is probable that Petitioner received a lower sentence than was possible if convicted at trial because he received a mitigated or lower term on the base offense, and prior convictions were stricken.  (LD 2.)  Given the

25

prosecutor's firm and continued objection to the three-year sentence indicated by the trial court, it is not likely that the prosecutor would have made a more favorable offer with respect to sentence. Finally, there is no basis for concluding that it is likely that the trial court would have significantly modified its indicated sentence to compensate for or otherwise to accommodate Petitioner's continued gang affiliation.

In summary, considering all the circumstances, the state court could reasonably have concluded that Petitioner did not show that he suffered any prejudice from the allegedly ineffective assistance of counsel in failing to advise Petitioner of the upcoming statutory change in work time credits for validated gang members. Petitioner's claim of ineffective assistance of counsel will be denied because the state court decision was not contrary to, or an unreasonable application of, clearly established federal law.

VII.   Ex Post Facto

Petitioner argues that application of § 2933.6, which precludes validated gang members in segregated housing from earning time credits, violated the prohibition against ex post facto laws because it was enacted after his offense and his plea.

The Supreme Court has not decided the precise ex post facto issue before the Court.  The Constitution provides, "No State shall... pass any... ex post facto Law."  U.S. Const. art I, § 10, cl. 1.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime and makes it greater than it

was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  Carmell v. Texas, 529 U.S. 513, 522 (2000). The provision ensures fair warning of the effect of legislative acts and permits individuals to rely on the meaning of statutes until they are explicitly changed; it also restricts governmental power by restraining arbitrary and potentially vindictive legislation. Weaver v. Graham, 450 U.S. 24, 28-29 (1981).  For a penal law to be ex post facto, it must be both disadvantageous to the offender, and it must be retrospective, that is, it must apply to events occurring before its enactment and change the legal consequences of acts completed before its effective date.  Id. at 29, 31.

In Weaver v. Graham, 450 U.S. at 25-26, the state applied to the petitioner a state statute that was passed after the date of the petitioner's offense and that repealed an earlier statute that had stated that gain time credits "shall" be granted; thus, the new statute reduced the amount of gain time awarded for good conduct and obedience to prison rules.  Id. at 25-26.  The new enactment was applied to a petitioner whose crime predated it, and it was used to calculate the gain time available to the petitioner.  Although other provisions permitted some discretionary gain time to be made up, under the old statute, the petitioner had been automatically entitled to the gain time simply for avoiding disciplinary infractions and performing assigned tasks.  The new law thus attached legal consequences to a crime committed before it took effect.  Further, regardless of whether the scheme for gain time was

27

part of the original sentence or not, it in fact determined to some extent the petitioner's prison term and thus substantially and materially altered the consequences attached to the crime.  Thus, it was retrospective.  Id. at 32-33, 35-36.

Likewise, in Lynce v. Mathis, 519 U.S. 433 (1997), it was held that application to the petitioner of a post-offense statute that cancelled early release credits that were available based solely on the growth of the state prison population violated the Ex Post Facto Clause of the Constitution because the new statute did not merely remove a mechanism that created an opportunity for early release, but rather rendered ineligible for early release a class of prisoners who were previously eligible for early release.  The new statute may have affected the precise amount of gain time the petitioner received, and thus it lengthened the time the petitioner spent in prison.  Id. at 442-49.

Here, the post-offense statute affected the Petitioner's opportunity to earn credits against his sentence.  However, Petitioner has not shown that it deprived him of any credits earned before the new statute took effect; rather, the credit that was taken from Petitioner was credit that began to accrue after January 25, 2010, the effective date of the statute.

Further, the new law did not change the legal consequences of acts completed before its effective date.  Although Petitioner's gang validation proceeding did occur before the effective date of the new statute, it was nevertheless reasonable for the state court to interpret the limitation on earning credit as a consequence not of the gang validation, but rather of Petitioner's own conduct of

continuing to associate with a prison gang found to present a threat
to institutional security.[4]

In summary, under existing Supreme Court precedent, applying
§ 2933.6 to Petitioner does not punish him for conduct that was
completed before the effective date of the statute; thus, it is not
retrospective. Cf. Kansas v. Hendricks, 521 U.S. 346, 370-71 (1997)
(holding that a state's statute for committing sexually violent
predators as applied to a person whose criminal conduct predated the
effective date of the statute was not ex post facto in part because
it was not retrospective due to the fact that confinement was based
on a determination of the person's current mental condition and the
resulting likelihood of sexually violent conduct in the future, and
not on the commission of conduct predating the enactment).

The Ninth Circuit Court of Appeals has recently set forth
this analysis. In Nevarez v. Barnes, - F.3d -, 2014 WL 1646930 (no.
12-17060, 9th Cir. Apr. 25, 2014), the court held in a habeas case
that where a state prisoner had been validated as a gang associate
and assigned to a segregated security housing unit before the
amendment of § 2933.6, the state court could reasonably have
determined that applying it to the petitioner did not violate the ex
post facto prohibition because it was the petitioner's own
additional, post-amendment, continuing conduct of remaining an

---

[4] Under California law, an inmate's gang involvement is considered current if
there is any documented gang activity within the past six (6) years, and an
associate of a gang is a prisoner involved periodically or regularly with members
or associates of a gang; further, regulations provide for procedures for the
validation of gang activity or association, and for periodic review of the active
or inactive status of gang members or associates. Cal. Code Regs., tit. 15,
§ 3378(c)-(h). A validated prison gang member or associate shall be considered
for release from a security housing unit after the inmate is verified as a gang
dropout through a debriefing process. Cal. Code Regs., tit. 15, § 3341.5(c)(4).

affiliate of a gang that precipitated the petitioner's ineligibility to earn credit; thus, the state court's decision was not an unreasonable application of clearly established federal law.  The Ninth Circuit did not determine whether it agreed with the state court's ex post facto analysis, but only that the state court's decision was not an unreasonable application of clearly established federal law within the meaning of § 22354(d)(1).

In light of this holding and the foregoing analysis, the Court concludes that Petitioner is not entitled to habeas relief on his ex post facto claim, and the claim will be denied.

VIII.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1)

1   the petition states a valid claim of the denial of a constitutional

2   right, and (2) the district court was correct in any procedural

3   ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

4        In determining this issue, a court conducts an overview of the

5   claims in the habeas petition, generally assesses their merits, and

6   determines whether the resolution was debatable among jurists of

7   reason or wrong.  Id.  An applicant must show more than an absence

8   of frivolity or the existence of mere good faith; however, the

9   applicant need not show that the appeal will succeed.  Miller-El v.

10  Cockrell, 537 U.S. at 338.

11       Here, it does not appear that reasonable jurists could debate

12  whether the petition should have been resolved in a different

13  manner.  Petitioner has not made a substantial showing of the denial

14  of a constitutional right.

15       Therefore, the Court will decline to issue a certificate of

16  appealability.

17       IX.  Disposition

18       Accordingly, it is ORDERED that:

19       1) The petition for writ of habeas corpus is DENIED; and

20       2) The Clerk is DIRECTED to enter judgment for Respondent; and

21       3) The Court DECLINES to issue a certificate of appealability.

22

23  IT IS SO ORDERED.

24   Dated:   **May 15, 2014**              /s/ Barbara A. McAuliffe

25                                    UNITED STATES MAGISTRATE JUDGE

26

27

28

                                 31